IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JUDY SHIPLETT, )
 )
        Plaintiff, )
 )
v. ) Case No. CIV-09-316-RAW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
        Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff Judy Shiplett (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 25, 1956 and was 52 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant worked in the past as a custodian in a public school and office worker in a police station. Claimant alleges an inability to work beginning September 16, 1997 due to an inability

3

to sit or stand for long periods, memory problems, pain, inability to function without pain medication, ability to lift only 10 pounds, and ability to do minimal bending and squatting.

## Procedural History

On February 29, 2008, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 24, 2009, an administrative hearing was held before ALJ Kim Parrish in Ardmore, Oklahoma. On March 31, 2009, the ALJ issued an unfavorable decision on Claimant's application. On July 31, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") sufficient to perform her past relevant work as a radio dispatcher.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in: (1) engaging in

an improper RFC evaluation; (2) failing to properly weigh the opinion of a treating physician and ignored probative evidence; and (3) failing to award benefits for a closed period.

**RFC Evaluation and Consideration of Treating Physicians' Opinions**

On April 21, 1998, Claimant underwent a decompressive laminectomy at L4-5, installation of a Ray Cage at L4-5, L5-S1, and arthrodesis with iliac crest bone grafting L4-5 and L5-S1. (Tr. 276). Claimant continued with physical therapy through March of 1999. (Tr. 233).

On October 6, 2000, a lumbar spine CT revealed a degenerative posterior bulge at L3-4. (Tr. 238). In May of 2001, Claimant was taking Oxycontin for pain which caused intermittent sleepiness. Claimant was attended by Dr. Brent Hisey during this time period. Dr. Hisey found Claimant's condition to be worsening in October of 2002 and recommended Claimant see Dr. Al Moorad. (Tr. 241).

On November 6, 2002, a lumbar spine CT revealed moderate left and mild right apophyseal osteoarthritis. (Tr. 235).

Claimant was treated by Dr. Moorad from November 18, 2002 until June 19, 2006. In various visits between September of 2003 and September of 2005, Dr. Moorad noted Claimant's continuing chronic pain and ultimately successful attempts to cease use of Methadone. (Tr. 292, 296, 298, 302). Dr. Moorad diagnosed

Claimant with failed back syndrome, bilateral radiculitis, chronic pain, muscle spasms, osteoarthritis, and insomnia and sleep disturbance. (Tr. 288).

In his decision, the ALJ found Claimant suffered from the severe impairment of status post chronic back injury. (Tr. 14). The ALJ concluded Claimant retained the RFC to perform sedentary work except that she can occasionally bend forward at the waist, occasionally bend at the knees to come to rest on her knees, and occasionally bend downward by bending her legs and spine. (Tr. 15).

Claimant challenges the basis for this RFC determination on several fronts. Claimant first states the ALJ's finding that Dr. Hisey released her for work with the restriction of no lifting over 10 pounds on August 30, 1999 mischaracterized the evidence. In fact, the form entitled "Release to Return to Work" is something less that what it purports to be. Dr. Hisey released Claimant for "limited duty" with "no lifting over 10 lbs." A notation appears, apparently from Claimant's then-employer, which indicates "not able to accommodate Ms. Shiplett's restrictions at this time. JKW." The note is dated August 31, 1999, the day after Dr. Hisey released Claimant with limitations. (Tr. 346). The ALJ incorporated Dr. Hisey's restriction on lifting in his RFC evaluation. The fact

Claimant was released to "limited duty" and the notation from Claimant's employer have no bearing upon Claimant's RFC. The ALJ, therefore, properly considered the conditions of Dr. Hisey's Release.

Additionally, the ALJ relied upon a Physical Work Performance Evaluation Summary authored by ErgoScience on July 9, 2003 in support of his RFC determination. The testing concluded Claimant was capable of performing light work. (Tr. 332-33). However, the ALJ failed to make mention of conditions placed upon the testing. Namely, ErgoScience found Claimant was unable to complete the 3.25 hours of evaluation without added pain management period(s). It also concluded that "[i]t is difficult to predict whether the client is capable of sustaining the light level of work for an 8-hour day." (Tr. 334). Again, these statements as to Claimant's ability to perform light work have little bearing upon her ability to perform the lesser, sedentary level of work activity. No error may be attributed to the ALJ's RFC evaluation on this point.

Claimant also contends the ALJ failed to consider various statements by her treating physician concerning chronic pain and her Methadone use. She also challenges whether the ALJ attributed the appropriate weight to the opinions of Drs. Hisey and Moorad under the standards set forth in Goatcher v. U.S. Dept. of HHS, 52

7

F.3d 288, 290 (10th Cir. 1995). Nothing in the ALJ's decision suggests he gave these opinions reduced weight. Indeed, the ALJ cites extensively from Dr. Moorad's reports on Claimant's pain management. (Tr. 19). The ALJ's conclusion, however, is Claimant's pain is controlled and none of her treating physicians placed restrictions upon Claimant's ability to perform basic work activities, other than the 10 pound lifting restriction by Dr. Hisey. This Court finds no error in these factual conclusions and the resulting RFC assessment.

### Closed Period Award

Claimant concludes her briefing with an argument for a closed period of disability between September 16, 1997 until May 16, 2005, the date Dr. Moorad reported Claimant was off Methadone. (Tr. 292). This Court agrees with the Commissioner that Claimant's treating physicians support a finding by Dr. Hisey that she could return to work in August of 1999 with a lifting restriction (Tr. 346) and the adoption by Dr. Moorad of the ErgoScience restrictions and endorsement she could work at a light level from July of 2003 (Tr. 302, 304). No evidentiary support for a closed period award appears in the administrative medical record.

### Conclusion

The decision of the Commissioner is supported by substantial

evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE